United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  GARY DODGEN,                          No. C-04-01392 MMC

12          Plaintiff,                    **ORDER DENYING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT;
13     v.                                 GRANTING DEFENDANT'S CROSS-
                                          MOTION FOR SUMMARY JUDGMENT**
14  JO ANNE B. BARNHART, Commissioner of
    Social Security,
15
            Defendant
16  _____/

17

18          Plaintiff Gary Dodgen, proceeding pro se, brings this action under 42 U.S.C.

19  § 405(g) for judicial review of a final decision of the Commissioner of the Social Security

20  Administration ("Commissioner").  Before the Court is plaintiff's motion for summary

21  judgment, as well as the Commissioner's cross-motion for summary judgment and

22  opposition to plaintiff's motion.  Plaintiff has not filed a reply in support of his motion or in

23  opposition to the Commissioner's cross-motion.  Having considered the papers filed by the

24  parties, the Court rules as follows.[1]

25                            **BACKGROUND**

26          On December 11, 2001, plaintiff, who was at that time 45 years of age, filed with the

27  _____

28          [1]Pursuant to the local rules of this district, the motions have been submitted on the
    papers without oral argument.  See Civil L.R. 16-5.

1   Social Security Administration ("SSA") an application for Supplemental Security Income

2   benefits, alleging in an accompanying Disability Report that he has been unable to work

3   since April 10, 1997, as a result of right and left shoulder injuries and pain in his arms.

4   (See Certified Transcript of Administrative Proceedings ("Tr.") 39, 54.)  After plaintiff's

5   application was denied by the SSA, both initially, (see Tr. 28-31), and on reconsideration,

6   (see Tr. 33-36), plaintiff requested a hearing before an administrative law judge ("ALJ"),

7   (see Tr. 37).  On June 24, 2003, the ALJ conducted a hearing.  (See Tr. 320.)

8          On November 26, 2003, the ALJ issued a decision, analyzing plaintiff's claim under

9   the SSA's five-step evaluation process.  See 20 C.F.R. § 404.1520.[2]  At the first step, the

10  ALJ found plaintiff has not engaged in substantial gainful activity as of April 4, 1997.  (See

11  Tr. 12.)  At the second step, the ALJ found plaintiff has "severe" impairments, specifically,

12  "chronic impingement syndrome, right shoulder, with status-post arthroscopic right shoulder

13  surgery (1997); status-post aggressive subacromial decompression, right shoulder (1998);

14  status-post right clavicle surgery (2003); status-post left fifth carpometacarpal joint surgery

15  (2003); and moderate to severe sensorineural hearing loss."  (See Tr. 15.)  At the third

16  step, the ALJ found plaintiff's impairments did not meet or equal an impairment listed in the

17  federal regulations.  (See Tr. 14.)  At the fourth step, the ALJ found plaintiff retains the

18  ability to perform light work, except for light work requiring "exposure to loud noise," (see

19  Tr. 14), and that because plaintiff's past relevant work, as a drywall hanger, entails "at least

20

21          [2]"The Commissioner follows a five-step sequential evaluation process in assessing
22  whether a claimant is disabled.
            Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant
23  is found not disabled.  If not, proceed to step two.
            Step two: Does the claimant have a "severe" impairment?  If so, proceed to step
24  three. If not a finding of not disabled is appropriate.
            Step three: Does the claimant's impairment or combination of impairments meet or
25  equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is
    automatically determined disabled.  If not, proceed to step four.
26          Step four: Is the claimant capable of performing his past work?  If so, the claimant is
    not disabled.  If not, proceed to step five.
27          Step five: Does the claimant have the residual functional capacity to
    perform any other work?  If so, the claimant is not disabled.  If not, the claimant is
28  disabled."
    McCartey v. Massanari, 298 F.3d 1072, 1074 n. 6 (9th Cir. 2002).

2

1   medium work," plaintiff cannot perform his past relevant work. (See Tr. 15.)  Finally, at the

2   fifth step, the ALJ concluded that the Commissioner had met her burden to show plaintiff

3   was not disabled, in light of plaintiff's ability to perform light work, and given his age,

4   education and work experience. (See id.)

5        Plaintiff next filed a request with the Appeals Council, seeking review of the ALJ's

6   decision. (See Tr. 7.)  After the Appeals Council denied plaintiff's request for review, (see

7   Tr. 4-6), plaintiff filed the instant action.

8                                    **LEGAL STANDARD**

9        The Commissioner's determination to deny disability benefits will not be disturbed if

10  it is supported by substantial evidence and based on the application of correct legal

11  standards. See Reddick v. Charter, 157 F. 3d 715, 720 (9th Cir. 1998).  "Substantial

12  evidence means more than a mere scintilla, but less than a preponderance; it is such

13  relevant evidence as a reasonable mind might accept as adequate to support a

14  conclusion." Andrews v. Shalala, 53 F. 3d 1035, 1039 (9th Cir. 1995).  If the evidence is

15  susceptible to more than one rational interpretation, the reviewing court will uphold the

16  decision of the ALJ. See id.

17                                      **DISCUSSION**

18       In his motion for summary judgment, plaintiff states the effects he experiences as a

19  result of his impairments, and argues that the medical evidence in the record supports a

20  finding that he has the following impairments:  "chronic impingement syndrome, right

21  shoulder, with status-post arthroscopic right shoulder surgery (1997); status-post

22  aggressive subacromial decompression, right shoulder (1998); status-post right clavicle

23  surgery (2003); status-post left fifth carpometacarpal joint surgery (2003); and moderate to

24  severe sensorineural hearing loss." (See Pl.'s Mot., filed December 30, 2004, at 2.)  As

25  noted above, the ALJ expressly found plaintiff had these precise impairments.  Accordingly,

26  plaintiff has failed to show, or even suggest, that the ALJ erred with respect to identifying

27  the nature of plaintiff's impairments.  In light of plaintiff's pro se status, and his discussion of

28  the subjective effects experienced as a result of his impairments, however, the Court

1   construes plaintiff's motion to assert that the ALJ erred in finding plaintiff, in spite of his

2   impairments, retains the ability to perform light work activities.

3          Light work requires "lifting no more than 20 pounds at a time with frequent lifting or

4   carrying of objects weighing up to 10 pounds," and "a good deal of walking and standing."

5   See 20 C.F.R. § 404.1567(b).  The SSA has interpreted "a good deal of walking and

6   standing" to mean that a claimant can walk or stand "off and on, for a total of approximately

7   6 hours of an 8-hour workday," and that "[s]itting may occur intermittently during the

8   remaining time."  See Social Security Ruling ("SSR") 83-10.

9          With respect to the lifting requirement, plaintiff, in response to the ALJ's question as

10  to how much weight plaintiff could lift "without a problem," answered, "[p]robably ten, 15

11  pounds."  (See Tr. 329.)  Plaintiff's treating physician, Joseph W. McCoy, M.D., ("Dr.

12  McCoy"), opined in a report issued in August 2001 that plaintiff could lift 20 pounds

13  overhead on an "occasional basis."  (See Tr. 124.)  Given such evidence, the record

14  contains substantial evidence to support a finding that plaintiff can perform the requisite

15  lifting necessary for light work.

16         With respect to sitting, plaintiff testified at the hearing that he could sit for

17  approximately an hour at a time.  (See Tr. 331.)  Thus, the record contains substantial

18  evidence to support a finding that plaintiff, during an eight-hour work day, can sit for two

19  hours on an intermittent basis.

20         The remaining issue, as to plaintiff's ability to perform light work activities, is whether

21  substantial evidence exists to support a finding that plaintiff can walk or stand for a total of

22  six hours during an eight-hour work day.  At the hearing before the ALJ, plaintiff testified

23  that he can only walk "a couple of blocks," (see Tr 330), and that he can stand for "around

24  ten minutes" before he needs to move around, (see Tr. 331.)  Plaintiff also testified that he

25  experiences pain in certain of his lower extremities, specifically, his left leg, left ankle, and

26  right knee, (see Tr. 327-28), and that such pain increases when he engages in "any type of

27  activity," (see Tr. 329.)  Although not clearly expressed in his motion, it appears plaintiff is

28  arguing that his testimony is sufficient to support a finding that plaintiff cannot walk or stand

4

1  for a total of six hours during an eight-hour work day, and that the ALJ erred in not

2  accepting plaintiff's subjective pain testimony.

3  　　　　The ALJ found plaintiff's testimony, to the extent offered for the proposition that

4  plaintiff could not perform light work activities, "not credible or reliable."  (See Tr. 14.)  In

5  support of this finding, the ALJ cited an opinion provided by plaintiff's treating physician, Dr.

6  McCoy, along with the results of functional capacity analyses conducted by, respectively,

7  an examining physician and a consulting physician, as well as plaintiff's description of daily

8  activities.

9  　　　　When an ALJ finds a claimant's testimony is not credible, "the ALJ must make a

10  credibility determination with findings sufficiently specific to permit the court to conclude

11  that the ALJ did not arbitrarily discredit" that testimony.  See Thomas v. Barnhart, 278 F. 3d

12  947, 958 (9th Cir. 2002).  Among the many factors that an ALJ can properly consider in

13  evaluating credibility are the "observations of treating and examining physicians and other

14  third parties regarding, among other matters, the nature, onset, duration, and frequency of

15  the claimant's symptoms" and the "claimant's daily activities."  See Smolen v. Chater, 80 F.

16  3d 1273, 1284 (9th Cir. 1996).  "If the ALJ's credibility finding is supported by substantial

17  evidence in the record, [the district court] may not engage in second-guessing."  Thomas,

18  278 F. 3d at 959.

19  　　　　In an August 1997 evaluation, Dr. McCoy, plaintiff's treating physician, opined that,

20  with the exception of an injury to plaintiff's right shoulder that reportedly occurred after

21  plaintiff lifted a "heavy tool box" while at work, plaintiff was "otherwise quite healthy."  (See

22  Tr. 103.)  In a later, August 2001, evaluation, Dr. McCoy reported that plaintiff has "well-

23  healed surgical scars on the right dominant shoulder," and that plaintiff is an "otherwise

24  healthy male."  (See Tr. 122.)  Dr. McCoy also stated that plaintiff's spine has an "excellent"

25  range of motion.  (See id.)  With respect to plaintiff's lower extremities, Dr. McCoy reported

26  that plaintiff "has had some bilateral knee pain, which he describes as arthritic-type pain,"

27  and "has also had surgical intervention for a left ankle fracture."  (See Tr. 121.)

28  Significantly, although Dr. McCoy set a number of work restrictions, he did not set any

1    limitations as to plaintiff's ability to stand or walk,[3] and, indeed, observed that plaintiff

2    "walk[ed] into the office without noticeable limp or deformity."  (See Tr. 122.)

3            In a June 13, 2002 Orthopedic Evaluation, Joseph Mariotti, M.D. ("Dr. Mariotti"), an

4    examining orthopedic surgeon, reported that plaintiff had undergone surgery to his left

5    shoulder and to his left calf and/or ankle, and that, in Dr. Mariotti's view, plaintiff obtained

6    "reasonably good results" from such surgeries.  (See Tr. 131-32.)  Dr. Mariotti stated that

7    during the course of his conducting a musculoskeletal evaluation of plaintiff, he observed

8    that plaintiff was able to "mount[ ] and dismount[ ] the examining room table freely," that

9    plaintiff's gait was "normal," and that plaintiff could "walk on his heels and toes without

10   demonstrative weakness."  (See Tr. 131.)  Dr. Mariotti examined plaintiff's spine and lower

11   extremities, and measured plaintiff's "[r]ange of motion . . . with attention to pain," (see id.),

12   finding "no evidence of joint swelling" and that "[a]ll the joints are stable."  (See Tr. 132.)

13   Dr. Mariotti further concluded that plaintiff has "good/normal function," (see id.), and that

14   plaintiff did not have any impairment as to the activities of standing and walking, (see id.).

15          In a later report, dated August 14, 2003, Dr. Mariotti again reported that during his

16   examination of plaintiff, he observed that plaintiff's gait was "normal" and that plaintiff was

17   able to "mount[ ] and dismount[ ] the examining room table freely," although Dr. Mariotti

18   further noted plaintiff "frequent[ly]" engaged in "moaning, groaning, huffing and puffing"

19   during the examination.  (See Tr. 306.)[4]  Based on the results of his examination, Dr.

20   Mariotti concluded plaintiff could "stand 1-2 hours at a time" and "walk 1-2 miles," and that

21   plaintiff could perform such activities "8 out of an 8-hour day."  (See Tr. 308.)

22          LolaLee VanCompernolle, M.D. ("Dr. VanCompernolle"), a state medical consultant,

23   opined, in a functional capacity assessment dated October 8, 2002, that plaintiff could

24   _____

25          [3]The limitations set by Dr. McCoy were restrictions on "frequent overhead use of
     either upper extremity," on "strenuous overhead work," and on lifting more than 20 pounds
26   "overhead" except on "an occasional basis."  (See Tr. 124.)

27          [4]Dr. Mariotti's August 2003 examination took place approximately eight weeks after
     plaintiff testified before the ALJ.  Dr. Mariotti's report analyzing the results of the August
28   2003 examination was provided to the ALJ before the ALJ issued his decision denying
     plaintiff's application for disability benefits.  (See Tr. 3, 14.)

1   stand and walk for six hours in an eight-hour workday, (see Tr. 153-54), and observed that

2   her opinion was "not significantly different" from those expressed by plaintiff's treating

3   physician and examining physicians, (see Tr. 158).

4        In short, all of the above-referenced physicians are of the opinion that plaintiff is able

5   to perform the walking or standing activities necessary to perform light work.  In the case of

6   Dr. Mariotti, such opinion was provided after each of two examinations, and, in the case of

7   Dr. McCoy, his 2001 opinion was given after his having provided treatment to plaintiff over

8   the course of at least four years.  As noted above, the ALJ may consider the observations

9   of physicians in determining whether a claimant is credible.  See Smolen, 80 F. 3d at 1284;

10  see also 20 C.F.R. § 404.1529 (providing that in determining credibility, ALJ should

11  consider statements by treating or examining physicians as to how claimant's impairments

12  affect claimant).  Consequently, the ALJ's finding that plaintiff's disabling pain allegations

13  were not credible in light of the observations and conclusions of physicians, including his

14  treating physician, is based on a legitimate ground, and is supported by substantial

15  evidence.

16       As noted, the ALJ also considered plaintiff's daily activities in determining whether

17  plaintiff was credible.  Such activities, as described by plaintiff, include watching his 14-year

18  son during the day while his wife works, (see Tr. 325-26, 337), performing "chores," such

19  as "pick[ing] up" and vacuuming, (see Tr. 337), as well as shopping and fixing meals, (see

20  Tr. 314), driving three times a week to visit relatives, (see Tr. 325-26), and performing

21  certain yard work at his father's home, for example, picking up trash and fruit in the yard,

22  (see Tr. 337-38).  In Rollins v. Massanari, 261 F. 3d 853 (9th Cir. 2001), the Ninth Circuit

23  affirmed an ALJ's finding that a claimant's disabling pain allegations were not credible,

24  where the claimant engaged in similar daily activities, such as watching a child while the

25  claimant's spouse was working, cooking, housekeeping, shopping, and leaving the home

26  for visits.  See id. at 857.  Even if plaintiff is contending the ALJ's interpretation of plaintiff's

27  testimony is not the only reasonable interpretation thereof, the fact that differing reasonable

28  inferences can be drawn from plaintiff's testimony is not a basis to find the ALJ erred.  See

7

id. (holding where "ALJ's interpretation of [the claimant's] testimony may not be the only reasonable one," ALJ's interpretation should not be disturbed on review because it is not reviewing court's function to "second-guess" credibility finding supported by substantial evidence).

In sum, the Court finds the ALJ did not arbitrarily discredit plaintiff's testimony; rather, the ALJ's credibility finding is based on legitimate grounds and is supported by substantial evidence.  See Thomas, 278 F. 3d at 958-59.  Consequently, plaintiff has not shown the ALJ erred with respect to his credibility findings.

Accordingly, plaintiff has not shown that the ALJ's decision denying plaintiff's claim for disability benefits should be reversed or that grounds exist to remand the matter.

**CONCLUSION**

For the reasons stated above,

1.  Plaintiff's motion for summary judgment is hereby DENIED; and

2.  The Commissioner's cross-motion for summary judgment is hereby GRANTED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 2, 2005

MAXINE M. CHESNEY
United States District Judge

8